## Whitcomb et al. versus Kephart et al.

*Right of attorney to bind client in case stated.—Liability of agent on personal contract.—What contracts are within the Statute of Frauds.*

1. *Semble*, that an attorney at law has authority to bind his client by stating a case for the judgment of the court.

2. Where, after a contract made by G. with a lumbering firm to cut saw-logs on their land, and a sub-contract by him to K. & Brother, a new contract was entered into between the K.'s., G., and W. & Sons, who were the general agents of the firm, but did not sign the contract as such,—whereby it was stipulated that the K.'s should go on with their work, and that W. & Sons should pay according to the sub-contract rate, except so far as G. himself should pay them out of the sum coming to him under the original contract. After completion of the work by the K.'s, and suit brought by them against W. & Sons for the balance due, which was admitted in a case stated by the attorneys of the parties, *Held*, That as the defendants contracted to pay personally, and not as agents, out of money furnished by their principals, they were personally liable, and that the entry of judgment by the court on the case stated was not error.

3. The undertaking on the part of the defendants was original, and therefore not within the Statute of Frauds.

ERROR to the Common Pleas of *Clearfield county*.

This was an action of *assumpsit*, by Henry H. Kephart and Essington Kephart against J. Whitcomb, Alonzo Whitcomb, and A. Whitcomb, in which the following case was stated by counsel for the opinion of the court:—

Langdon & Diven were doing business at Williamsport, Penna..; owned several tracts of timber lands in Clearfield county, in the neighbourhood of Clearfield creek.

They made a written contract with A. J. Goss and Isaac Goss, dated September 29th 1858, by which A. J. Goss and Isaac Goss agreed for several years to come to cut and take out saw-logs for Langdon & Diven, off their land, and deliver them at Clearfield Creek, at the price of $.25 per thousand feet, board measure, to be paid from the 10th to the 15th of each month for the work of the month previous.

Isaac Goss did not act under the contract, but left it in the hands of A. J. Goss. A. J. Goss afterwards, for a short time, associated his brother with him in said contract.

In the fall of 1860, A. J. Goss and his brother gave a sub-contract to H. H. & E. Kephart, the plaintiffs in this suit, to cut and put in part of these logs at $2 per thousand, and A. J. Goss and his brother were to pay them.

The defendants in this suit, J. Whitcomb & Sons,—consisting of Judah Whitcomb, the father, and his two sons, Alonzo Whitcomb and another called Ad. Whitcomb—kept a store of their own in the vicinity of this land.

Whitcomb & Sons also acted as agents for Langdon & Diven,

looked after their interests in the Goss log job, and were furnished with money or means to pay for the work done as it progressed.

About two weeks after the contract was made, A. J. Goss was informed by Kepharts that Whitcomb & Sons would not let them have goods out of the store unless Goss would see them paid out of the money coming to him from Langdon & Diven. H. H. Kephart, with A. J. Goss, then went to the store of Whitcomb & Sons, Alonzo being there. It was then and there agreed that Whitcomb & Sons would pay the Kepharts the $2 per thousand on their contract with Goss, except what Goss paid them; that Whitcombs should retain this amount out of the money coming to Goss from Langdon & Diven; and that Kepharts should go on and put in the logs in the manner already agreed on between them and Goss.

It was understood that the time of payment was to be the same as that fixed in the contract of Goss with Langdon & Diven. Kepharts then went on and put in logs under this arrangement until the last of February 1861, to the amount of 1,071,062 feet.

In the mean time the Kepharts obtained goods at the store of Whitcomb & Sons, which were charged to them, and considered so much paid on the contract.

The bill at the store is admitted to be $1514.02, and the amount paid by Goss to Kepharts $340—making in all $1854.02; the work done by Kepharts amounted to $2142.12—leaving a balance of $288.10, with interest from March 15th, A. D. 1861.

If, under the facts as stated, Kepharts, the plaintiffs, are entitled in law to recover from the defendants, the said J. Whitcomb & Sons, for the balance due them on account of the work done as aforesaid, then the court is to render judgment for the plaintiffs for a sum equal to the above balance of $288.10, with interest thereon from the 15th day of March, A. D. 1861.

But if in law the plaintiffs are not entitled to recover from defendants for said work, then the court to render judgment for the defendants, reserving to each party the right to a writ of error.

It is further agreed that the notes of evidence of both plaintiffs' and defendants' counsel taken at the arbitration, and hereunto attached, be admitted along with the foregoing statement, not to contradict any of the facts therein admitted, but as explanatory evidence of what may be ambiguous or uncertain in the foregoing statement.

It being admitted that the testimony fixing the logs taken out by plaintiffs at 1,061,062 feet is erroneous, and should be 1,071,062 feet.

And it being understood that all the other papers connected with this suit are to be considered amended, so far as the same may be necessary to make them conform with the foregoing case stated.

[Whitcomb *et al. v.* Kephart *et al.*]

The court below (LINN, P. J.), on hearing the cause, delivered the following opinion, June 1st 1863:—

"The defendants are admitted by the case stated to have acted as agents of Langdon & Diven, and to have been furnished with money or means to pay for the work done as it progressed. As a general rule, an agent becomes personally liable only when the principal is not known, or when there is no responsible principal, or when the agent becomes liable by an undertaking in his own name, or when he exceeds his power. In this case the agency of the defendants was known to all parties, but the allegation is, that defendants undertook in their own name and upon their own responsibility to pay the amount which should be coming to plaintiffs, according to their agreement with Goss. As we view the facts stated, we see nothing more in them than that Goss ordered, or gave authority to the defendants, as agents of Langdon & Diven, to pay the plaintiffs out of the sum agreed to be paid to Goss, $2 per thousand feet less what Goss had already paid them; and the defendants, acting as agents of one of the original contracting parties, agreed to recognise this sub-contract, and pay to plaintiffs accordingly.

"In all this we can see nothing which would render the defendants personally bound, if Langdon & Diven failed to pay. But it seems that Langdon & Diven did not fail to pay, but actually furnished the defendants with the means of payment; and the facts as admitted show that defendants had in their possession that which had been furnished to them by their principal to meet this very balance due to plaintiffs.

"In this view of the case the defendants are clearly bound to pay over, according to their agreement, to the plaintiffs the moneys received by them from their principals for that purpose. As known agents, and acting as such, the defendants would not be bound for the performance of the original contract, nor for the payment to Goss or to the defendants (his sub-contractors), in case of their inability or failure to pay. This is, however, a very different thing from an agreement by them to pay the defendants $2 per thousand out of moneys actually furnished to them by their principals to meet this very undertaking. The means or moneys being proved, or admitted to be in the hands of the agents, and direction by the principal not to pay over, clearly the defendants are bound by their engagement, and the balance may be recovered from them either upon footing of an express or implied undertaking. Perhaps in the absence of an express agreement to pay to plaintiffs, the action upon the implied promise could only be brought by Goss; but of this it is unnecessary to inquire.

"The defendants further rely upon the Statute of Frauds and Perjuries. The recovery in this case is based not upon an under-

taking to pay a debt or obligation of another, but upon their own personal obligation to pay over to the plaintiffs money received by them for the plaintiffs' use.

"Such a contract does not follow within the provisions of the statute.

"For these reasons judgment is now, this 16th day of June, A. D. 1863, rendered in favour of the plaintiffs and against the defendants, on the case stated, for the sum of $327."

On the 1st of October 1863 defendants moved for a rule to show cause why the judgment in this case should not be opened, and in support of the rule filed the affidavit of A. C. Whitcomb denying that he had authorized R. J. Wallace, his attorney, to enter into a case stated with Kephart & Brother, and knew nothing of it until an execution was served upon Whitcomb & Sons for the money, and averring that they had overpaid Kephart & Brother the amount of their claim. The affidavit of R. J. Wallace, Esq., confirmed this statement.

The court, however, refused to open the judgment. Whereupon this writ was sued out by the defendants, for whom the entry of the judgment on the case stated, and the refusal of the court to open the judgment, were assigned for error.

*William A. Wallace*, for plaintiffs in error.—1. It is denied that the "case stated," or any portion of it, admits that the money to pay Kepharts was in the hands of Whitcombs at any time. Certainly, it was not there when the contract was made, for it was to be paid as the work progressed.

1. The court below assumed a fact that did not exist, and made it the basis of their judgment. The act of Whitcombs at the time of the agreement is to be the test of their liability. If they had the money, the position of the court would be correct; but, by the very terms of the contract, it was clear that it was not then in their hands. How did they then act? Certainly only as agents; and the fair construction of the case stated, is that they are described as such with the right to disburse the money when received. There is no admission of their receipt of this money; and the only language that could be construed into such an admission, expressly refers to the Goss log job, and says not a word about Kepharts' job. See Berks County *v.* Pile, 6 Harris 439 ; Cook *v.* Shrauder, 1 Casey 313.

2. It is not within the power of an attorney at law to bind his clients in the manner in which this case stated seeks to bind Whitcombs.

This was an adverse proceeding—commenced by summons, arbitrated by the plaintiffs, with an award against the defendants, from which they appealed to a jury; after which the case stated was entered into without the assent or knowledge of the defendants,

[Whitcomb *et al. v.* Kephart *et al.*]

and facts were admitted that were erroneous, and credits were not claimed which in fact existed. The defendants and their counsel both swear that it was entered into without the knowledge or consent of Whitcombs, and at the very earliest moment possible they sought relief. See Coxe *v.* Nichols, 2 Yeates 547 ; Compher *v.* Anawault, 2 Watts 493.

*J. B. McEnally*, for defendants in error.—1. The contract of Whitcomb & Sons was not merely an agreement by them as agents of Langdon & Diven, but was a personal contract on their part with the Kepharts to pay them for their work, except what Goss paid them, and in consideration of this agreement or contract with Whitcomb & Sons, Kepharts were to go on, and afterwards did go on, and put in the logs and do the work for which this suit was brought. This contract can admit of only two constructions ; the one construction is that they (Whitcomb & Sons) were to pay the Kepharts ; and this would render Whitcomb & Sons liable at all events. This is the true construction of the contract. For the object of Whitcombs was not to pay Kepharts the money furnished by Langdon & Diven, but to pay them chiefly out of their own store at a profit to themselves, and then retain the money furnished by Langdon & Diven ; and this seems to be what the contract says. The other construction is that Whitcombs were to pay Kepharts out of the money received by them from Langdon & Diven. And in this latter case Whitcomb & Sons would be liable only when they were furnished by Langdon & Diven with the means of paying. The court below adopted the latter view, being the one most favourable to the plaintiff in error. The case stated admits that Whitcomb & Sons were furnished with money or means to pay for the work done as it progressed.

2. The objection that Whitcombs' attorney could not bind his clients in the case is not sustained by argument or authority. It is surely as regular and as clearly within the power of an attorney to agree to a case stated for his client as it is to write out his declaration, enter his plea, or admit evidence in the course of a trial. In all such cases it is presumed that the client has informed his attorney of the matters pertaining to the case. The very fact of employing him as attorney gives him this authority.

The opinion of the court was delivered by

STRONG, J.—The record does not present to us the question whether an attorney at law has authority to bind his client by stating a case for the judgment of the court. If it did, we should perhaps find it difficult to distinguish between such a power and his right to call witnesses or refuse to call them on the trial of an issue of fact, his power to demur to evidence, or to confess judg-

[Whitcomb *et al. v.* Kephart *et al.*]

ment.   These powers are confessedly his.   But the only question for us is whether, on the case as stated, the court erred in giving judgment for the plaintiffs.   The important facts as agreed upon are, that one Goss had a contract with Langdon & Diven to cut saw-logs for them on their land for a stipulated price per thousand feet.   Afterwards Goss gave a sub-contract to the plaintiffs below, by which they undertook to cut a part of these logs.   Whitcomb & Sons, the defendants, were agents of Langdon & Diven, and were furnished with money or means to pay for the work done as it progressed.   The sub-contractors meeting with some real or supposed difficulty in obtaining payment from the defendants, a new arrangement was made between the three parties, Goss, the plaintiffs and the defendants, by which it was agreed that the plaintiffs should go on with their work, that the defendants should pay them according to the rate fixed in their sub-contract, except so far as Goss himself might pay them, and reserve the amount paid by them out of the sum coming to Goss under his contract with Langdon & Diven.   The plaintiffs then went on with the work, and there is an unpaid balance due them of $288.10, with interest from March 15th 1861.   On this state of facts judgment for the plaintiffs was inevitable.   The new contract was made by them with the defendants personally, and not with them as agents of Langdon & Diven.   Nothing in the case shows that the plaintiffs undertook to work for Langdon & Diven, but they prosecuted their work in fulfilment of their new engagement with Whitcomb & Sons.   It is noticeable that the contract of the defendants was not to pay out of money furnished by their principal.   They were to be reimbursed with that money, but they did not limit their obligation to pay by any mention of the fund to be used for such a purpose.   And if they had thus limited it, the case stated finds they had funds in hand to pay as the work progressed furnished to them by Langdon & Diven.   It is said this means money furnished for the Goss job.   Admit it.   The work of the plaintiffs was a part of the Goss job.

It is said the Statute of Frauds was in the way of the plaintiffs' recovery, but the undertaking of the defendants was an original one.   The debt had become their own.

The judgment is affirmed.